UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

ROGER THOMPSON,

       Petitioner,

v.

KENNETH MCKEE,

       Respondent.

_____/

Case No. 09-cv-11062

HONORABLE DENISE PAGE HOOD

**OPINION AND ORDER DENYING PETITION FOR WRIT OF HABEAS
CORPUS AND DECLINING TO ISSUE CERTIFICATE OF APPEALABILITY**

This is a habeas corpus action under 28 U.S.C. § 2254. Roger Thompson

("Petitioner"), presently confined at the Richard A. Handlon Correctional Facility, Ionia,

Michigan,[1] challenges his jury trial convictions of five counts of first degree premeditated

murder, for which he was sentenced to mandatory life imprisonment for each conviction.

For the reasons stated below, the application is DISMISSED WITH PREJUDICE.

I. BACKGROUND

Petitioner was convicted of the above offenses following a jury trial in the Wayne

County Circuit Court. This relevant facts regarding petitioner's conviction are set forth in

the Michigan Court of Appeals' opinion affirming his convictions.

_____

[1]Petitioner was incarcerated at the Bellamy Creek Correctional Facility, Ionia Michigan,
when he originally filed his habeas petition; however, he has since been transferred to the
Richard A. Handlon Correctional Facility. The proper respondent in a habeas case is the
habeas petitioner's custodian, which in the case of an incarcerated petitioner is the warden
of the facility where the petitioner is incarcerated. Rule 2(a) of the Rule Governing § 2254
Cases; *see also Edwards v. Johns*, 450 F. Supp. 2d 755, 757 (E.D. Mich. 2006). In most
cases where a petitioner is transferred to a different facility after the petition has been filed,
the Court would order an amendment of the case caption. As the Court is denying the
petition in this case, it finds no reason to order the caption amended.

In March 2004, defendant lived with his girlfriend, Lisa Shelton, and her children in a two-bedroom house in Detroit. Shelton's three oldest children, William Parker, Jr., aged 16, Wrandell Parker, aged 14, and Wanee Parker, aged 12, were fathered by a former boyfriend. Defendant was the father of Shelton's youngest daughter, Aushanai Thompson, aged nine. Shelton's 13-year-old sister, Christina Knott, lived with defendant, Shelton, and their children at this time.

Late in the evening of March 31, 2004, or early in the morning of April 1, 2004, William, Wrandell, Wanee, Aushanai, and Christina were sleeping in the front bedroom of the house. Defendant and Shelton were lying in bed in the back bedroom. Apparently, defendant had his jacket under his pillow. Shelton asked defendant why he had the jacket under his pillow, and an argument ensued. During the argument, defendant grabbed Shelton by her neck and choked her. Shelton died of manual strangulation.

Defendant then went to the basement to retrieve a metal pipe. He went to the front bedroom where the children were sleeping and struck Wanee. The commotion awoke the other children. Defendant forced William to bind the hands and feet of the other children with strips of red cloth and, apparently, then bound William's hands and feet. Defendant struck William, Wrandell, Wanee, and Aushanai repeatedly with the pipe, killing them. Defendant then pulled Shelton's body into the front room and laid it on the bed, next to the bodies of two of her children.

Apparently during these events, Christina had been bound and, at some point, defendant ordered Christina to remove her clothing. Defendant decided not to kill Christina. Somehow, Christina managed to escape the house the following morning. She ran to a neighboring house, wearing nothing but a bra, and banged on the door. When Carlin Stephens, who resided at the home, opened the door, Christina told her that someone had killed her sister and her sister's children. Stephens, noticing that Christina looked "terrified," called the police and provided Christina with clothing.

Officers quickly responded to the scene. When Officer Sophia Devone questioned Christina about the recent events, Christina exclaimed that her family was dead next door. Soon thereafter, Christina saw defendant outside his home. Christina pointed to defendant and repeatedly exclaimed to Devone, "That's him!" Devone instructed other officers at the scene to apprehend defendant. Defendant saw the officers approaching him and fled. A two-block chase ensued before defendant was detained, handcuffed, and placed in the backseat of a patrol car.

Defendant was taken to police headquarters, where Investigator Dale Collins took his statement. Collins read defendant his constitutional rights from the Certificate of Notification Form. Although defendant declined to sign his name, he agreed to speak with Collins. Defendant admitted that he had killed Shelton and her children.

Investigators at the crime scene found blood throughout the house and a bloodstained metal pipe near the front door. The blood on the pipe contained deoxyribonucleic acid (DNA) of the five victims and was determined to be the murder weapon. Investigators also found a latex dishwashing glove with blood on the fingers on the floor of the hallway leading to the bedrooms. A mixture of the five victims' DNA and defendant's DNA was found on the fingertips of the glove.

*People v. Thompson*, No. 269035, 2007 WL 2141416, **1 -2  (Mich. App. July 26, 2007).

In March, 2006, Petitioner filed an application for delayed appeal with the Michigan

Court of Appeals.  Through counsel, Petitioner raised the following claims in his brief on

appeal:

I.   [Petitioner] was denied his AMS [Amendments] V and XIV rights of due process and his AM VI right to a fair trial when he was deprived of timely discovery, the use of an expert, and an adjournment.

II.   [Petitioner] was denied his AMS V and XIV rights to due process and his AM VI right to effective assistance of counsel when defense counsel failed to investigate, and pursue, an insanity defense.

III.   [Petitioner] was deprived of his AMS V and XIV rights of due process, his AM V right of confrontation and his AM VI right [to] a fair trial when he was denied the right to explore the reasons for Christina[ Knott's] absence as a witness.

Petitioner filed a *pro per* Standard 4 brief that raised the following claims:

I.   [Petitioner] states that a confession was improperly admitted at trial in violation of Petitioner's Fifth Amendment rights where Petitioner testified that he requested he didn't want to talk and he just wanted to go back to his cell before his interrogation, [and] stated that he never signed or checked a constitutional rights notification form that would not have supported the testimony of Detective Collins, and where the interrogating officer continued to interrogate the [Petitioner] after the [Petitioner] continued and repeatedly ask[ed] to be returned to his cell and stated I have nothing to say to you.

A.   The [trial] court err[ed] in ruling on the Walker hearing due to prejudice that is clearly established in the record.

II.   [Petitioner] claims that the prosecutor misle[d] the jury and the court with information in his opening and closing statements and throughout the trial that was never in the discovery packet[,] therefore causing prejudice, it will also show that the prosecutor acted in bad faith when the only known

3

prosecutor[']s witness statement is opposite of the prosecutor's theory and that Christina Knott['s] police statement was withheld from the jury.

A. The prosecutor improperly argued facts which were not supported by the evidence.

The Michigan Court of Appeals affirmed the Petitioner's convictions in an unpublished, *per curiam* opinion.  The Michigan Supreme Court denied leave to appeal in a brief form order.

Petitioner now seeks the issuance of a writ of habeas corpus on the following grounds:

I. Petitioner was denied due process and a fair trial when he was deprived of timely discovery, the use of a DNA expert, and an adjournment.

II. Trial counsel was ineffective for failing to pursue an insanity defense.

III. The admission of Christina Knott's testimony violated the Confrontation clause.

IV. The admission of Petitioner's confession violated his Miranda rights.

V. Prosecutorial misconduct.

Respondent has filed an answer to the petition.  In the answer, Respondent argues that the writ should be denied as to the first and second claims in the petition because they are either non-cognizable on habeas or lack merit, and as to the third, fourth and fifth claims because they are both procedurally defaulted and lack merit.  Upon review, the Court agrees that the petition fails to establish an entitlement to habeas relief.

## II.  STANDARD OF REVIEW

28 U.S.C. §2254(d) imposes the following standard of review for habeas cases:

An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–

(1)        resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

(2)      resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision of a state court is "contrary to" clearly established federal law if the state court arrives at a conclusion opposite to that reached by the Supreme Court on a question of law or if the state court decides a case differently than the Supreme Court has on a set of materially indistinguishable facts. *Williams v. Taylor*, 529 U.S. 362, 405-06 (2000).  An "unreasonable application" occurs when "a state-court decision unreasonably applies the law of [the Supreme Court] to the facts of a prisoner's case." *Id.* at 409.  A federal habeas court may not "issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.

## III. ANALYSIS

### A. Claim I:  Denial of Due Process and Fair Trial

Petitioner first contends that he was denied due process and a fair trial when he was deprived of timely discovery, the use of a DNA expert, and an adjournment.  This claim was raised before the Michigan Court of Appeals and rejected on the merits.  Relief is therefore available on this claim only if the Petitioner can establish that this determination unreasonably applied clearly established federal law.  28 U.S.C. § 2254.

"[T]he suppression by the prosecution of evidence favorable to an accused upon request violates due process where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."  *Brady v. Maryland*, 373 U.S. 83, 87 (1963).  The prosecution violates the *Brady* rule with respect to evidence that it fails to provide to the defense when (1) the evidence at issue is favorable to the accused, either because it is exculpatory or because it is impeaching; (2) the evidence was suppressed by

5

the state, either wilfully or inadvertently; and (3) prejudice ensued. *Strickler v. Green*, 527 U.S. 263, 281-82 (1999).

The Michigan court denied Petitioner's *Brady* claim on direct appeal because the Petitioner failed to show that the DNA evidence that he received on the eve of trial was exculpatory:

> The forensic biologist's report indicated that [Petitioner's] DNA was found on the bloody latex gloves found at the scene, thereby implicating him in the charged offenses. Accordingly, the DNA evidence recovered from the latex glove is not exculpatory or otherwise favorable to [Petitioner]. [Petitioner's] argument that he was denied due process and a fair trail because the prosecution disclosed the DNA evidence recovered from the latex glove on the Friday before trial lacks merit.

*Thompson*, 2007 WL 2141416 at *3

Petitioner fails to establish that this holding is contrary to or an unreasonable application of *Brady*, or that it is based on an unreasonable determination of the facts in the record. The Michigan court set forth the correct rule of law, correctly noted that *Brady* applies only to exculpatory evidence, and correctly determined that nothing in the record established that the DNA evidence found on the bloody latex gloves was exculpatory. The burden is on the Petitioner to show that he was entitled to disclosure under *Brady*. *Coe v. Bell*, 161 F.3d 320, 344 (6th Cir. 1998).

The Petitioner also has the burden of showing that he was prejudiced by the nondisclosure of the evidence. *See O'Hara v. Brigano*, 499 F.3d 492, 503 (6th Cir. 2007). This requires showing a reasonable probability of a different result had the evidence been disclosed. *Strickler*, 527 U.S. at 280; *O'Hara*, 499 F.3d at 503. There is no evidence in the record that supports Petitioner's contention that earlier disclosure of the DNA evidence would have had any impact on the Petitioner's defense. The Petitioner therefore fails to establish prejudice.

Petitioner also argues that he was denied due process and a fair trial when the trial court denied him an adjournment to attempt to obtain an expert witness at the public expense.  Petitioner argument largely hinges on Michigan Court Rule 2.503(D), which permits a trial court discretion to grant an adjournment to promote justice.  *People v. Jackson*, 467 Mich. 272, 276 (2002).  To the extent that Petitioner is claiming that the prosecutor violated state procedural rules, habeas relief is not available because such a claim alleges an error in the application of state laws, not a federal constitutional violation.  *Lorraine v. Coyle*, 291 F.3d 416, 441 (6th Cir. 2002);  *see Estelle v. McGuire*, 502 U.S. 62, 68 (1991) ("[I]t is not the province of a federal habeas court to reexamine state-court determinations on state-law questions").  A habeas court can only grant habeas relief to a person who is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a); *Estelle*, 502 U.S. at 68.  Habeas relief is not available to the extent that Petitioner claims that the prosecutor violated state procedural rules in failing to provide him with the DNA evidence.

Petitioner also claims that the trial court's denial of an adjournment to permit him time to employ a DNA expert at the public expense denied him his federal constitutional rights to due process and a fair trial.  This claim is cognizable on habeas review.  The record, however, fails to establish that Petitioner is entitled to habeas relief for the trial judge's refusal to grant a continuance.

The decision to grant or deny a continuance is within the discretion of the trial judge, and "not every denial of a request for more time . . . violates due process."  *Ungar v. Sarafite*, 376 U.S. 575, 589 (1964).  On habeas review, a denial of a continuance violates due process "only where there is "an unreasoning and arbitrary 'insistence upon expeditiousness in the face of a justifiable request for delay'. . .."" *Landrum v. Mitchell*, 625

F.3d 905, 927 (6th Cir. 2010) (quoting *Morris v. Slappy*, 461 U.S. 1, 11-12 (1983)) (quoting *Ungar,* 376 U.S. at 589)). In addition, the petitioner must show "'that the denial resulted in actual prejudice to the defense.'" *Id.* (quoting *United States v. King*, 127 F.3d 483, 487 (6th Cir. 1997) (internal quotation marks and citation omitted)). Factors to consider in determining whether a continuance was properly denied include the length of the requested delay, whether other continuances were granted, whether the request was for legitimate reasons, whether the defendant contributed to the circumstances giving rise to the delay, whether the defendant was prejudiced by the denial of the continuance, and the complexity of the case. *Id.* at 928

A review of the record shows that the Michigan courts reasonably applied federal law in holding that the denial of a continuance in this case did not violate the Petitioner's due process rights. The trial court's decision to deny the continuance was not unreasonable and arbitrary because the Petitioner does not establish that a continuance would have been useful in refuting the DNA evidence. Petitioner also fails to show that the trial court's ruling prejudiced him. The evidence against him was weighty, including a confession to all the murders, motive, opportunity to commit the crime, and flight when the police department arrived at the scene. The DNA evidence on the glove was only marginally inculpatory, and other explanations for the presence of the victims' and the Petitioner's DNA on the glove were effectively explored by defendant's counsel on cross-examination of the prosecution's expert witness. There is no merit to Petitioner's claim that the Michigan court unreasonably applied federal law in holding that the denial of a continuance did not deny him due process of law.

### B. Claim II - Ineffective Assistance of Counsel

In his second claim for relief, Petitioner asserts that he was denied his right to the effective assistance of counsel where his attorney failed to investigate and pursue an insanity defense.  The Michigan Court of Appeals denied this claim on the merits, finding that Petitioner had failed to establish that his trial counsel did in fact fail to pursue an insanity defense.  This Court may therefore grant relief only if the Michigan court's rejection of the claim resulted in a decision that was contrary to or an unreasonable application of clearly established federal law, or was based on an unreasonable determination of the facts in light of the evidence presented in state court.  28 U.S.C. § 2254(d).

To establish ineffective assistance of counsel, Petitioner must demonstrate both that his attorney's performance was deficient and that this deficient performance prejudiced the defense.  *Strickland v. Washington*, 466 U.S. 668, 687 (1984).  The "deficient performance" prong requires showing that "counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*  The "prejudice" prong requires showing "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694.   The Petitioner must establish both prongs in order to be entitled to habeas relief, and the reviewing court need not address the second prong of the *Strickland* test if the Petitioner fails to make a sufficient showing on the other prong.

The Michigan court reviewed the legal requirements under Michigan law for asserting the affirmative defense of insanity, and held that the Petitioner had failed to establish that his trial counsel had in fact failed to pursue an insanity defense:

> Although defendant argues that his counsel failed to pursue an insanity defense, the trial court record indicates otherwise.  Specifically, defense counsel noted on the record at the September 2, 2004 arraignment that she planned to file a notice of insanity and, on the same day, the trial court issued an order for evaluation

regarding criminal responsibility in light of this insanity claim.  Although a copy of the report issued by the Center for Forensic Psychiatry regarding defendant's criminal responsibility for the murders is not included in the trial court file, defendant does not argue that the report supports an insanity defense.  Again, effective assistance of counsel is presumed.  *LeBlanc, supra,* at 578, and we will not substitute our judgment for that of counsel regarding matters of trial strategy.  *Rockey, supra* at 76-77.  The record indicates defense counsel pursued an insanity defense and, absent indications in the record to the contrary, we presume that defense counsel determined that an insanity defense would not be effective.  Accordingly, defendant's claim of ineffective assistance of counsel lacks merit.

*Thompson*, 2007 WL 2141416 at *4.

The state court's finding that Petitioner's counsel did in fact investigate an insanity defense is presumptively correct, absent clear and convincing evidence to the contrary. 28 U.S.C. §2254(e).   The Petitioner has not offered evidence rebutting this construction of the record, and the Court is therefore bound to accept it.  Given this factual finding, the Court must conclude that Petitioner had not demonstrated that the state court's holding unreasonably applied *Strickland*.   Counsel is strongly presumed to render competent assistance and to make all significant decision in the exercise of reasonable professional judgment.   *Strickland*, 466 U.S. at 690.   A criminal defendant must overcome a presumption that the challenged action might be considered sound trial strategy.  *Darden v. Wainwright*, 477 U.S. 168, 185-87 (1986).   The record establishes that counsel did consider an insanity defense, and fails to establish that the decision of counsel not to pursue the defense at trial was outside the realm of competent legal advise.  The Petitioner therefore fails to establish the first prong of the *Strickland* test.

The Petitioner also fails to establish that he was prejudiced by his trial counsel's failure to assert an insanity defense because he does not show facts in the record that establish that such a defense would have been successful.  When "one is left with pure speculation on whether the outcome of the trial . . . could have been any different," there is an

insufficient showing of prejudice. *Baze v. Parker*, 371 F.3d 310, 322 (6th Cir. 2004).  While there is evidence that Petitioner had some mental issues, rocked back and forth during court appearances and shook, there is no evidence that Petitioner's mental state met the standards for insanity under Michigan law.  Petitioner has therefore failed to establish that he was prejudiced by his trial counsel's failure to pursue an insanity defense.

In sum, Petitioner fails to establish either that his trial counsel deficiently failed to pursue an insanity defense or that he was prejudiced by this claimed failure.  The Michigan court did not unreasonably apply *Strickland* in determining that the Petitioner failed to establish constitutionally ineffective assistance of counsel.  Petitioner is not entitled to habeas relief on this claim.

### C. Claim III - Confrontation Clause Violation

The Petitioner argues in his third claim for habeas relief that he was denied his federal constitutional right to confrontation when the trial court admitted at trial two out-of-court statements made by Christina Knott to the police.

Respondent argues that this claim is procedurally defaulted because the Petitioner failed to challenge in the trial court the admission of the statement on constitutional grounds and the state appellate court relied on this procedural ground in declining to review the claim.   Respondent also asserts that the claim is without merit.  The Court agrees with Respondent that the claim is both procedurally defaulted and lacks merit and therefore denies this claim for habeas relief.

### 1. Procedural Default

A federal habeas court may not consider the merits of a procedurally defaulted claim unless the petitioner demonstrates cause for the default and prejudice resulting or that failing to review the claim would result in a fundamental miscarriage of justice.  *Lundgren*

11

*v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006). A claim may become procedurally defaulted when a state prisoner has failed to comply with an independent and adequate state procedural rule, causing him to forfeit review of his federal claims in state court. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991). A prisoner may procedurally default his federal claim when he fails to comply with a state procedural rule that requires him to preserve his claimed error at trial for appellate review by making a contemporaneous objection at trial. *Engle v. Isaac*, 456 U.S. 107, 126-29 (1982). A claim may also become procedurally defaulted if the petitioner fails to comply with state procedural rules in presenting his claim to the appropriate state court. *Lundgren*, 440 F.3d 763.

A federal court applies a three-part test to determine if a state prisoner has procedurally defaulted his federal constitutional claims in state court. *Willis v. Smith*, 351 F.3d 741, 744 (6th Cir. 2003). First, there must be a firmly established state procedural rule which is applicable to the petitioner's claim and the petitioner must not have complied with the rule. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991). Second, it must fairly appear that the last state court to which the petitioner sought review relied on the procedural rule as a basis for its decision to refuse to review the prisoner's federal claims. *Coleman*, 501 U.S. at 740; *Harris v. Reed*, 489 U.S. 255, 263 (1989). Third, the procedural default must be an "adequate and independent" state ground on which the state can rely to foreclose review of a federal constitutional claim. *County Court of Ulster County, New York v. Allen*, 442 U.S. 140, 148 (1979); *Rust v. Zent*, 17 F.3d at 160. If these three prerequisites are met, the prisoner has procedurally defaulted his federal claims in state court, and the cause and prejudice test applies to determine whether the prisoner's failure to comply with the state procedural rule will be excused so that a federal court can address the claim in a federal habeas corpus proceeding. *Willis*, 351 F.3d at 745.

If the last state court affirms the conviction both on the merits and alternatively on the procedural ground, the procedural default will be deemed invoked and the claim is procedurally barred. *Harris*, 489 U.S. at 264, n.10; *Scott v. Mitchell*, 209 F.3d 854, 867 (6th Cir. 2000). If the state court declares itself limited to plain error review because the petitioner failed to preserve an issue, the state procedural bar has been established and cause and prejudice test applies. *Lundgren*, 440 F.3d at 765.

The Petitioner failed to object to the introduction of the statement in the trial court on confrontation clause grounds and the appellate court relied on this failure to limit its review of Petitioner's constitutional claim to plain error effecting substantial rights. The failure to properly raise and preserve issues in the trial court by contemporaneous objection is a generally recognized and firmly established independent and adequate state law ground for refusing to review trial errors. *Coleman*, 501 U.S. at 750-51. Plain-error review by a state appellate court constitutes enforcement of a state's contemporaneous-objection rule. *Williams v. Bagley*, 380 F.3d 932, 968 (6th Cir. 2004). An alternative ruling by the state appellate court noting both lack of contemporaneous objection and lack of merit is still subject to the procedural default rule. *Scott*, 209 F.3d at 877. The contemporaneous objection rule constitutes an adequate and independent state law ground that bars habeas review of this claim unless the petitioner can establish the requirements to excuse the default. *Taylor v. McKee*, 649 F.3d 446, 450-51 (6th Cir. 2011). Therefore, because Petitioner did not contemporaneously object to the introduction of Christina Knott's statement on Confrontation Clause grounds, and the Michigan Court of Appeals relied on this failure in limiting its review to plain error, the claim is procedurally defaulted.

A federal habeas court is barred from reviewing procedurally defaulted claims unless the prisoner can show that the default should be excused. A procedural default may be

13

excused if the prisoner can establish cause for his failure to comply with the state procedural requirement and actual prejudice to his defense at trial or on appeal. *Teague v. Lane*, 489 U.S. 288, 298-99 (1989). If the prisoner cannot establish cause and prejudice, he may still obtain habeas review if he submits new evidence showing that a constitutional violation probably resulted in a conviction of one who is actually innocent. *Dretke v. Haley*, 541 U.S. 386, 393 (2004); *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

To establish cause, the Petitioner must present a substantial reason to excuse the default. "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's effort to comply' with the state procedural rule." *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Carrier*, 477 U.S. at 488). To show prejudice, the Petitioner must demonstrate that the constitutional error worked to his "actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." *United States v. Frady*, 456 U.S. 152, 170 (1982). There is no prejudice where the petitioner does not show a reasonable probability of a different verdict. *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

The Petitioner can establish neither cause nor prejudice on this record. The Petitioner cannot establish cause because he has failed to establish or even argue that an objective factor external to the defense prevented him from complying with the contemporaneous objection rule. He cannot establish prejudice because, as discussed below, the trial court did not violate the Confrontation Clause by admitting Christina's hearsay statement and because there was substantial other evidence of guilt in the record.

Nor is Petitioner's default excused under the actual innocence exception. This narrow exception only applies where the Petitioner submits new and reliable evidence showing that a constitutional violation has probably resulted in the conviction of one who is actually

14

innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). The Petitioner has not submitted any new evidence of actual innocence, so this exception does not apply.

The Petitioner has procedurally defaulted his Confrontation Clause claim in state court, and has failed to establish that the default should be excused, and therefore this Court is barred from granting relief on that claim.

### 2. The Merits

Petitioner's Confrontation Clause claim also lacks merit. The Sixth Amendment Confrontation Clause guarantees a criminal defendant the right "to be confronted with the witnesses against him." The Confrontation Clause bars the admission of testimonial statements made by witnesses out of court unless the declarant is unavailable and the accused had a previous opportunity to cross-examine the declarant. *Crawford v. Washington*, 541 U.S. 36, 68-69 (2004). The Confrontation Clause, however, does not bar the admission of non-testimonial out-of-court statements. *Davis v. Washington*, 547 U.S. 813, 821 (2006). "Statements are nontestimonial when made in the course of police interrogation under circumstances objectively indicating that the primary purpose of the interrogation is to enable police assistance to meet an ongoing emergency." *Id.* at 822.

The Michigan Court of Appeals held that Christina's out of court statements were non-testimonial because she made the statements in response to police questioning "under circumstances objectively indicating that the primary purpose of the interrogation was to enable police assistance to meet an ongoing emergency." *Thompson*, 2007 WL 2141416 at *5. This holding was not an unreasonable application of clearly established federal law as established by *Davis*. The Supreme Court held in *Davis* that statements made to a 911 operator were not testimonial because the speaker was not acting as a witness. *See Davis*, 547 U.S. at 828 ("No 'witness' goes into court to proclaim an emergency and seek

15

help").  The Court contrasted that case with the written affidavit made by a different victim in the companion case in *Davis,* which was made after the police had separated her from her attacker, and with the statement the Court held was testimonial because in *Crawford v. Washington*, 541 U.S. 36 (2004), where the speaker was questioned by police officers at the police station several hours after the crime was committed.  The Michigan court reasonably applied this precedent in holding that Christina's statement to the police that her family was "dead next door," and spontaneously calling out "that's him" when she saw the Petitioner outside the house were not "testimonial" within the meaning of the Confrontation clause.

Finally, Petitioner cannot establish that he was prejudiced by the trial court's admission of Christina Knott's statements to the police near the scene of the crime.  The fact that her family was "dead next door" was established by other evidence and is not prejudicial.  The exclamation "that's him," while incriminatory, is minor in relation to other evidence of Petitioner's guilt, including his detailed confession to the crimes.

Petitioner's Confrontation Clause is both procedurally barred and lacks merit.  The Court therefore denies habeas relief for Petitioner's third claim.

### D. Claim IV - Miranda violation

Petitioner's fourth claim for habeas relief asserts that his federal constitutional rights were violated by the admission of a confession that he asserts was involuntary and taken in violation of the rights established by the United States Supreme Court in *Miranda v. Arizona,* 384 U.S. 436, 444 (1966).  Petitioner also asserts that his confession should have been suppressed because it was not videotaped or audiotaped.  Finally, he asserts that the trial court's rejection of his motion to suppress demonstrates a deep-seated bias that denied him a fair trial.  The Court concludes that none of these claims has merit.

16

The Fifth Amendment to the United States Constitution protects individuals from self-incrimination.  To protect this privilege, the United States Supreme Court has held that when an individual is in custody, law enforcement officials must warn that individual before interrogation begins of his right to remain silent, that any statement that he makes may be used against him, and that he has the right to retained or appointed counsel.  *Miranda*, 384 U.S. at 478-79.  Statements made by a criminal defendant who has not received this *Miranda* warning that are the product of custodial interrogation cannot be admitted at that defendant's trial.  *Id.* at 444.  If the defendant indicates before speaking that he wishes to consult an attorney, there can be no questioning, nor can the police further question a defendant who indicates that he does not wish to be questioned.  *Id.* at 444-45.

*Miranda* rights may be waived if the prosecution establishes that the waiver was voluntary, knowing and intelligent.  *Miranda*, 384 U.S. at 445.  The waiver must be voluntary "in the sense that it was the product of a free and deliberate choice rather than intimidation, coercion, or deception."  *Moran v. Burbine*, 475 U.S. 412, 421 (1986).  For a statement to be involuntary requires some element of coercive police conduct.  *Colorado v. Connelly*, 479 U.S. 157, 167 (1986).  The waiver must also "have been made with a full awareness of both the nature of the right being abandoned and the consequences of the decision to abandon it."  *Moran*, 475 U.S. at 421.   Whether a waiver is knowing and intelligent is determined by the totality of the circumstances, including the background, experience and conduct of the accused.  *Id.*  The burden is on the prosecution to establish waiver by a preponderance of the evidence.  *Connelly*, 479 U.S. at 168.  "Once it is determined that a suspect's decision not to rely on his rights was uncoerced, that he at all times knew that he could stand mute and request a lawyer, and that he was aware of the

State's intention to use his statements to secure a conviction, the analysis is complete and the waiver is valid as a matter of law." *Moran*, 475 U.S. at 422-23.

The Michigan trial court held an evidentiary hearing prior to trial on Petitioner's motion to suppress the statement.  The trial court credited the testimony of the detective who took Petitioner's statement over that of Petitioner, who testified that he was not advised of his constitutional rights, that he asked to see a lawyer, that he repeatedly told the detective that he did not wish to speak, and that he in fact never gave a confession.  On appeal, the Michigan Court of Appeals rejected Petitioner's challenge to the admission of the statement:

> The trial court did not err when it denied defendant's motion to suppress the introduction of the confession into evidence. Detective Dale Collins brought defendant, aged 35, into the interrogation room at the Detroit Police Department headquarters at approximately 2:15 p.m. on April 1, 2004. Collins initially determined that defendant was neither injured nor under the influence of narcotics or alcohol. Defendant told Collins that he had completed high school and could read and write. Collins advised defendant of his constitutional rights using the Constitutional Rights Certificate of Notification form, and defendant indicated to Collins that he understood these rights.
>
> Defendant refused to initial the form by the description of each right or sign the bottom of the form, but he agreed to make an oral statement. Collins questioned defendant regarding the circumstances of the killings. During the interview, Collins recorded in writing each question and defendant's answers. Defendant did not sign his name at the end of this two-and-a-half page statement. Collins testified that defendant neither requested an attorney nor asked to return to his cell during the hour-long interview. Collins also claimed that defendant rocked back and forth on his chair and cried during parts of the interview.FN4 After considering the evidence presented to the trial court regarding the circumstances surrounding the interview, we conclude that the trial court properly determined that defendant's statements to Collins were voluntarily and knowingly made. Accordingly, the trial court did not err when it admitted defendant's statements at trial.
>
> FN4. Defendant displayed the same behavior during the *Walker* hearing.
>
> Nonetheless, defendant maintained at the suppression hearing, and argues on appeal, that he was not advised of his constitutional rights, that he repeatedly told Collins that he did not wish to speak to him, and that he requested an attorney during the interview. Again, a review of the evidence indicates that the

trial court could properly conclude that defendant's statements were voluntarily made. We defer "to the trial court's superior ability to view the evidence and witnesses and will not disturb its factual findings unless they are clearly erroneous." *People v. Peerenboom*, 224 Mich.App 195, 198; 568 NW2d 153 (1997). Because defendant and Collins were the only individuals present during the interview in question, we defer to the trial court's credibility determination and acceptance of Collins's version of events.

*People v. Thompson* 2007 WL 2141416, at *7.

On habeas review, the factual findings of the state court are binding on this Court absent clear and convincing evidence to the contrary. 28 U.S.C. § 2254(e). The record supports the factual findings of the Michigan court that the Petitioner was advised of his constitutional rights, that he did not refuse to speak and did not request an attorney prior to offering a statement, and the Petitioner has offered no clear and convincing evidence to rebut this presumption. Given these findings of fact, there is no merit to Petitioner's claim that the admission of his statement violated his *Miranda* rights.

Petitioner's argument that the failure of the police to videotape or record his confession also violated his rights. The Michigan court reasonably rejected this claim. There is no requirement under Michigan or federal law that interrogations be preserved or recorded in any particular way, and the failure of the police to videotape the interrogation does not demonstrate bad faith. *See People v. Fike*, 128 Mich. App. 178, 186 (1998) (no right to videotaped interrogation under Michigan law or federal constitution); *United States v. Smith*, 319 Fed. Appx. 381, 384-85 (6th Cir. 2009) (failure to videotape interrogation does not require suppression of confession); *Arizona v. Youngblood*, 488 U.S. 51 (1988) (failure of police to preserve potentially useful evidence was not denial of due process of law absent defendant's showing bad faith on part of police).

Petitioner also argues that the trial court's denial of his motion to suppress, along with the court's denial of other defense motions, demonstrated that the trial judge was biased.

19

Judicial rulings alone almost never constitute a valid basis for alleging judicial bias. *Liteky v. United States*, 510 U.S. 540, 555 (1994). There is no evidence in the record of a "deep-seated favoritism or antagonism that would make fair judgment impossible." *Id.* Petitioner's claim that he was denied a fair trial because of judicial bias is without merit.

E. Claim V - Prosecutorial Misconduct

Finally, Petitioner asserts that his rights were violated by prosecutorial misconduct. Petitioner asserts that the prosecutor committed misconduct because he failed to introduce Christina Knott's statement to the police into evidence. Petitioner also asserts that the prosecutor engaged in misconduct during closing argument when he stated to the jury that Petitioner had informed Detective Collins that the crimes occurred on March 31, 2004 and stated that the Petitioner wore gloves during the commission of the crime. Respondent argues that this claim is both procedurally barred and meritless.

"On habeas review, 'the relevant question is whether the prosecutor's comments 'so infected the trial with unfairness as to make the conviction a denial of due process.'" *Lundgren*, 440 F.3d at 778 (quoting *Darden v. Wainwright*, 416 U.S. 637, 643 (1974) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974))). Prosecutorial misconduct can result in habeas relief only where the claimed misconduct is so egregious as to deny the petitioner a fundamentally fair trial. *Hamblin v. Mitchell*, 354 F.3d 482, 494 (6th Cir. 2003).

This circuit employs a two step approach to determine whether claimed prosecutorial misconduct warrants habeas relief. *See Macias v. Makowski,* 291 F.3d 447, 452 (6th Cir. 2002). First, the court must determine whether the remarks or conduct was improper by examining the context of the remarks and existing precedent. *United States v. Carroll*, 26 F.3d 1380, 1387-89 (6th Cir. 1994). If the conduct was improper, the court should then

determine whether the conduct was sufficiently flagrant to warrant relief. *Id.* Flagrancy is determined by applying the factors set forth in *Carroll*. *Macias*, 291 F.3d at 452. The court should consider (1) did the improper conduct tend to mislead the jury or prejudice the defendant, (2) was the improper conduct isolated or pervasive, (3) was it deliberate or accidental, and (4) the strength of the evidence against the accused. *Boyle v. Million*, 201 F.3d 711, 717 (6th Cir. 2000). If the conduct is improper and flagrant, a new trial should be ordered. *Carroll*, 26 F.3d at 1390.

Respondent argues that Petitioner's claim of prosecutorial misconduct based on the failure of the prosecutor to introduce Christina's statement into evidence is procedurally barred. The Court agrees. The Michigan Court of Appeals noted that the Petitioner had failed to challenge the asserted error at trial and limited its review to plain error. As discussed above, this triggers the procedural bar, and the petitioner has failed to show cause for his failure to challenge the evidence at trial or resulting prejudice.

Even if the claim were not procedurally barred, it lacks merit. As the Michigan court noted, there is nothing in the constitution or any court rule that would require the prosecutor to introduce Christina's statement into evidence, and the defense was free to offer the statement if it chose to do so. As the prosecutor did not commit misconduct by failing to introduce Christina's statement into evidence, that failure cannot form the basis for a prosecutorial misconduct claim.[2]

Petitioner also asserts that the prosecutor committed misconduct by several statements made during closing argument. The Michigan Court of Appeals considered and rejected on the merits this second claim of prosecutorial misconduct:

_____

[2]The prosecution likely could not have introduced the statement even if it wished to because the written statement would have likely have been held to have been testimonial hearsay, and its admission would run afoul of *Crawford v. Washington*.

The record shows that the prosecutor's arguments were not improper. The evidence introduced at trial showed that defendant indicated during his confession that the killings occurred on March 31, 2004. In his closing argument, the prosecutor noted to the jury that, at the time of Collin's interview with defendant, Collins did not know when the murders occurred. Furthermore, the evidence technician recovered two latex gloves at the scene, and subsequent testing of human tissue found on one of the gloves revealed the presence of a mixture of defendant's DNA and the victim's DNA. During his closing argument, the prosecutor discussed the significance of this item and argued that defendant could have worn the gloves during the killing. We conclude that this argument was proper based on the evidence. Accordingly, defendant failed to establish that the prosecutor's comments during his closing argument constitute plain error.

*Thompson*, 2007 WL 2141416 at *9.

This holding is not based on an unreasonable determination of the facts in the record. The comments by the prosecutor were not improper under Michigan law. They were supported by the evidence and reasonable inferences that could be drawn from the evidence. See *People v. Bahoda*, 448 Mich. 261, 282 (1995) (prosecutors are free to argue the evidence and all reasonable inferences to be drawn from the evidence as it relates to their theory of the case). Furthermore, the comments were isolated rather than pervasive, there is no evidence of improper intent on the part of the prosecutor, and the evidence against the Petitioner was substantial. The Petitioner has demonstrated neither that the prosecutor committed misconduct nor that the alleged prosecutorial misconduct prejudiced the defense. The holding of the Michigan court rejecting Petitioner's ineffective assistance of counsel claim did not unreasonably apply clearly established United States Supreme Court precedent. The Petitioner is not entitled to habeas relief on his prosecutorial misconduct claim.

## IV.  CERTIFICATE OF APPEALABILITY

Pursuant to Rule 11 of the Rules Governing Section 2254 Proceedings, which was amended as of December 1, 2009:

> The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant.... If the court issues a certificate, the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2).  If the court denies a certificate, a party may not appeal the denial but may seek a certificate from the court of appeals under Federal Rule of Appellate Procedure 22.

Rule 11, Rules Governing Section 2254 Proceedings.

A certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  Courts must either issue a certificate of appealability indicating which issues satisfy the required showing or provide reasons why such a certificate should not issue. 28 U.S.C. § 2253(c)(3); Fed. R. App. P. 22(b); *In re Certificates of Appealability*, 106 F.3d 1306, 1307 (6th Cir.1997).  To receive a certificate of appealability, "a petitioner must show that reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller–El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotes and citations omitted).  The Court finds that its resolution of the petitioner's claims would not be debatable among reasonable jurists. The Court therefore does not issue a certificate of appealability.

## V. CONCLUSION

The state appellate court's rejection of Petitioner's claims did not result in a decision that was contrary to Supreme Court precedent, an unreasonable application of federal law as determined by the Supreme Court, or an unreasonable determination of the facts.

Accordingly, the petition for writ for habeas corpus is DENIED and the matter is DISMISSED WITH PREJUDICE.

It is further ORDERED that a certificate of appealability is DENIED on all grounds raised by the petitioner.


Dated: December 30, 2011          s/Denise Page Hood_____
                                  DENISE PAGE HOOD
                                  United States District Judge


I hereby certify that a copy of the foregoing document was served upon Roger Thompson, 520217, Richard A. Handlon Correctional Facility, 1728 Bluewater Highway, Ionia, MI 48846 and the parties and/or counsel of record on December 30, 2011, by electronic and/or ordinary mail.


                                  s/Julie Owens_____
                                  Case Manager